IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| MONTE MEDLEY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-02-2388 |
| FEDERAL EXPRESS, INC., | * | |
| Defendant. | * | |

\* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Monte Medley ("Plaintiff" of "Medley") has brought this suit against his former employer, Federal Express Corporation ("Federal Express" or "Defendant"), alleging that Federal Express discriminated against him because of his race in violation of Maryland law. Currently pending before the Court is Defendant's Motion for Summary Judgment [24]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6. For the reasons stated below, the Court will GRANT Defendant's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. This Court's July 15, 2003 Opinion sets forth the relevant facts, but this Memorandum Opinion will briefly recite the pertinent facts of this case.

After working for Federal Express for nearly twenty years, Plaintiff, an African-American male, was terminated on May 5, 2000. In particular, Federal Express has stated that it terminated Plaintiff because he received three disciplinary letters within a twelve-month period – a performance reminder on January 17, 2000, a warning letter on January 28, 2000, and a performance

reminder on May 5, 2000.

While Plaintiff does not contest that he received the three disciplinary letters, he alleges he was not terminated because of the reasons detailed in these letters, but because of his tense relationship with his supervisor, David Digruilles ("Digruilles). Plaintiff has testified that Digruilles treated him more demandingly than he did other, white, employees. He claims that Digruilles singled him out for criticism. Furthermore, Plaintiff alleges that on one occasion in 1998, Digruilles grabbed Plaintiff's shoulder and called him a "nigger." According to Plaintiff, after that incident, Digruilles began a campaign to force Plaintiff to leave Federal Express. Federal Express has denied these charges, contending that it terminated Plaintiff because he refused to follow instructions in delivering packages and to accept assignments from Federal Express's dispatcher.

Plaintiff filed this action against Federal Express alleging disparate treatment in violation of Maryland Code, Article 49B § 42(a). On June 20, 2002, Plaintiff filed his action in the Circuit Court for Prince George's County seeking back pay, compensatory and punitive damages. Defendant removed the case to this Court on the basis of diversity jurisdiction on July 17, 2002.

This Court previously granted summary judgment in favor of Federal Express. The Court of Appeals reversed this ruling, directing the Court to address Plaintiff's Counsel's Rule 56(f) concerns. On remand, this Court provided the parties with additional time to conduct discovery. On May 5, 2005, this Court ordered the parties to submit supplemental briefs on Defendant's earlier motion for summary judgment. Both parties filed supplemental briefs, and this motion is ripe and ready for disposition.

## STANDARD OF REVIEW

Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). In a motion for summary judgment, the moving party discharges its burden by showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). To defeat a motion for summary judgment, the non-moving party must come forward and show that a genuine issue of material fact exists. *See Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

Plaintiff has brought a claim for a violation of § 2-222 of the Prince George's County Code, which prohibits employers from discriminating based on race in the conditions of employment. A plaintiff may bring a private right of action for a violation of a Prince George's County ordinance under Maryland Code, Art. 49B, § 42(a), which provides that:

> a person who is subjected to an act of discrimination prohibited by the county code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

Md. Code Ann., Art. 49b, § 42(a) (2005).

3

Although Plaintiff sues under Maryland law, the frameworks for proof used in the Title VII context also apply to this case. *See Wise v. Gallagher*, 228 F. Supp. 2d 671, 674 (D. Md. 2002) (applying the *McDonnell Douglas* framework to a state-law based discrimination action); *State Comm'n on Human Relations v. Washington County Cmty. Action Council, Inc.*, 59 Md. App. 451, 455-56, 476 A.2d 222, 224 (1984) (same).

In a Title VII suit, a plaintiff may avoid summary judgment through two avenues of proof. *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may present direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor motivated the employer's adverse employment decision under the mixed-motive method of proof. Second, a plaintiff may proceed under the *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), burden-shifting method of proof. *Hill*, 354 F.3d at 285; *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 318 (4th Cir. 2005); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (holding that direct evidence is not required for mixed-motive instruction in a Title VII suit). Aware of the difficulty of obtaining evidence of discrimination in a Title VII case, the Supreme Court developed the *McDonnell Douglas* burden-shifting framework to give plaintiffs who lack direct evidence a method for raising an inference of discrimination. *See Diamond*, 416 F.3d at 318 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253-54 (1981)). Proceeding under the *McDonnell Douglas* burden-shifting scheme, a plaintiff bears the initial burden of establishing, by preponderance of the evidence, a prima facie case of discrimination. *Diamond*, 416 F.3d at 318. Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* By producing a legitimate reason for the employment

4

action, the defendant rebuts the plaintiff's prima facie case. To prevail, the plaintiff must demonstrate that the non-discriminatory reason is a mere pretext. *Id.* Throughout the case, however, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

Even with the additional affidavits and deposition testimony submitted in his supplemental brief, Plaintiff has not demonstrated that Federal Express discriminated against him because of his race through the *McDonnell Douglas* method of proof. A plaintiff establishes a prima facie case of discriminatory discharge by showing:

> (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class.

*King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). Specifically, Plaintiff has failed to adduce evidence that he was performing at a level that met his employer's legitimate expectations or that the position was filled a similarly qualified applicant who was not African-American.

Plaintiff does not dispute that he received three disciplinary letters within a twelve-month period. He concedes that he received the January 17, 2000 letter because he did not respond to a dispatcher's request for over two hours. This letter shows that he acknowledged the request at 12:27 p.m., but did not pick up the package and instead requested that the customer meet him. Finally, the dispatcher sent another courier to pick up the package. Although Plaintiff has asserted that he had trouble with the DADS, or electronic dispatch system, he offers no explanation for his failure to retrieve that package once he had admittedly received the request. Likewise, Plaintiff does not

5

dispute that he received a warning letter on January 28, 2000 because he again did not respond to a request to pick up a package. Again, evidence reflects that Plaintiff received the request, but did not comply. The third and final letter of reprimand also concerned Plaintiff's failure to complete the work assigned to him.

In response, Plaintiff has alleged that these facts cannot demonstrate that his work failed to meet his employer's legitimate expectations and contends that several other workers at the facility behaved in a similar manner, but did not receive letters of reprimand.[1] Plaintiff, however, lacks any evidence to support this contention. In fact, the deposition testimony offered by Plaintiff directly contradicts this account. Jennifer Hagler, a white courier, stated under oath that she never refused to pick up a package, explaining:

> [You can receive] a message that says, you know, you're mandated to do this pickup and you have to do it. And at that point I mean I would always go do the pickup. I would just make arrangements you know, like I normally do and go do the pickup or the delivery or whatever it was.

(Hagler Dep. 37). Hagler also testified that she received two letters of reprimand over the period of nine years. While Plaintiff has made several allegations that other white employees were not reprimanded for refusing to do perform the work assigned, the record simply does not support these allegations. It is well-settled that "a plaintiff's own assertions of discrimination in and of themselves

---

[1] Plaintiff initially alleged that many employees failed to follow Federal Express's policies and procedures, but were not reprimanded. Plaintiff has not adduced evidence of this alleged behavior. In addition, this Court is not bound to accept all the allegations in Plaintiff's affidavit that lack factual support, as conclusory affidavits are insufficient to survive a motion for summary judgment. *See, e.g.*, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics*, *Inc*., 871 F.2d 452, 456 (4th Cir. 1989). As a result, this Court finds that Plaintiff has not made out a prima facie case of wrongful discharge under the *McDonnell Douglas* framework.

In the alternative, Plaintiff argues that he has shown that a genuine issue of material fact exists under a mixed-motive analysis. To obtain a mixed-motive instruction, a Title VII plaintiff need only demonstrate that an employer used a forbidden consideration with respect to any employment practice and present sufficient evidence, either direct or circumstantial, "for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Desert Palace.*, 539 U.S. at 101 (internal quotation marks omitted); *see also Hill*, 354 F.3d at 285. Once Plaintiff makes such a showing, the employer cannot escape liability. However, through use of a limited affirmative defense, if an employer can demonstrate that it "would have taken the same action in the absence of the impermissible motivating factor," plaintiff's damages are limited to injunctive and declaratory relief, and attorney's fees and costs. 42 U.S.C..§ 2000e-5(g)(2)(B); *see also Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 317 (4th Cir. 2005). The mixed-motive framework requires a plaintiff to produce, "evidence of conduct or statements that both reflect . . . the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated by Desert Palace,* 539 U.S. 90; *see also EEOC. v. Warfield-Rohr Casket Co., Inc*., 364 F.3d 160, 163 (4th Cir. 2004).

Viewing the facts of this case in the light most favorable to Plaintiff, Digruilles' alleged altercation with Plaintiff and use of the word "nigger" is direct evidence of a discriminatory

attitude.[2] The revealing discriminatory remark was made by the Plaintiff's immediate superior, who had the authority to make decisions about his employment future at Federal Express. Digruilles, however, did not make the alleged statement during the decisional process. Therefore, a question remains whether Digruilles' alleged discriminatory attitude bore in any way on Plaintiff's termination.

As previously noted, no evidence exists connecting this remark with Mr. Medley's termination. Federal Express terminated Plaintiff because he received three letters of reprimand in a twelve-month period.[3] These letters recount specific incidents, in which Plaintiff failed to respond in a timely manner to the dispatcher. Furthermore, Digruilles was not the only manager concerned about Plaintiff's performance. Plaintiff's Senior Manger, Gary Aldred, an African American male, also complained that Plaintiff failed to respond to Aldred's messages, participated in Plaintiff's January 28, 2005 reprimand, and approved his termination. The Federal Express policy expressly states that three written reprimands may result in termination. Simply put, the record does not contain additional facts that would tend to show a nexus between the derogatory racial remark and Plaintiff's termination.

As this Court finds that Plaintiff has not established a prima facie case of racial

---

[2] Plaintiff also claims that Federal Express had a video monitoring system in place at the time Digruilles allegedly grabbed his shoulder and called him a "nigger," but that Federal Express has withheld this tape. The existence of this tape is irrelevant, as this Court will assume that Digruilles made the comment for the purposes of deciding this motion.

[3] The Court must also note that Defendant's motion for summary judgment contains exhibits that establish that Federal Express had warned Plaintiff about his work performance *before* Digruilles became his manager. The documents show specific instances of Plaintiff's poor performance and include: complaints regarding Plaintiff's work, Plaintiff's work appraisals, letters to Plaintiff regarding complaints, several counseling reports, and affidavits from supervisors further detailing Plaintiff's poor work performance.

8

discrimination and has not shown that Digruilles' animus motivated the decision to terminate Plaintiff, Defendant is entitled to summary judgment.

## **CONCLUSION**

For all of the aforementioned reasons, the Court will grant Defendant's Motion for Summary Judgment [24]. An Order consistent with this Opinion will follow.

Date:   January 20, 2006                              /s/

Alexander Williams, Jr.
United States District Court